UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

GROUP DEKKO, INC., et al.,

    Plaintiffs,

    v.

                                Case No. 1:23-CV-465-CCB-SLC

METRO LIGHT & POWER, LLC,

    Defendant.

**OPINION AND ORDER**

Before this Court is Defendant, Metro Light & Power, LLC ("Metro") Motion to Dismiss for Lack of Subject Matter Jurisdiction and Improper Venue [DE 20], which became ripe on April 17, 2024, after being fully briefed. Metro also filed its Motion to File Under Seal Declaration of Daniel Deutsch [DE 21], which became ripe on March 28, 2024, without any response being filed. Metro later filed a Motion for Leave to Submit Additional Evidence in support of the motion to dismiss [DE 39], which Plaintiffs oppose and became ripe on September 13, 2024.

Plaintiffs Group Dekko, Inc. ("Dekko") and its subsidiary Furnlite, Inc. (collectively "Plaintiffs") filed suit against Metro in November 2023 seeking a declaratory judgment related to in-surface power distribution units and power supply products manufactured by Furnlite and similar products manufactured by Metro. [DE 16 at 1, ¶ 1]. Plaintiffs allege that Metro wants to prevent them "from continuing to sell their products and have threatened to sue." [*Id.*]. Plaintiffs ask the Court to enter a judgment that they are not liable for alleged trade dress infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and that Metro's claims to the contrary are invalid. [*Id.*].

Plaintiffs allege that this action arises under laws of the United States including patent law (35 U.S.C. § 101 *et seq.*), the Lanham Act (15 U.S.C. § 1051 *et seq.*), and the Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202) and then assert that subject matter jurisdiction exists pursuant to 28

U.S.C. § 1331 and 15 U.S.C. § 1125(a), a provision of the Lanham Act. [*Id.* at 2, ¶¶ 5–6]. Plaintiffs also allege that venue is proper in this Court under 28 U.S.C. § 1391 because "Metro transacts business in this district and a substantial part of the events giving rise to Plaintiffs' claims occurred and are continuing to occur in this district." [*Id.* at 3, ¶ 8].

Metro challenges Plaintiffs' allegations of subject matter jurisdiction and venue through its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(3). [DE 20]. Metro argues that there is no federal question to establish subject matter jurisdiction and that there is no cause or controversy, as required under Article III of the United States Constitution, to pursue this case. In support, Metro emphasizes that it has not taken or threatened any lawsuit or other affirmative action against Plaintiffs under federal law and that it wants to resolve any dispute without litigation. Alternatively, Metro asks that this case be dismissed, or transferred to another district, because venue is improper in this District under 28 U.S.C. § 1406(a). Should subject matter jurisdiction exist and venue be proper, Metro contends this case should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) for the convenience of witnesses.

Based on the applicable law, facts, and arguments, Metro's motion to dismiss will be denied as to subject matter jurisdiction and granted as to improper venue. In the interest of justice, this case will be transferred to the Southern District of New York. Additionally, Metro's motion to seal and motion to file additional evidence will be granted.

## I.    METRO'S MOTION FOR LEAVE TO FILE UNDER SEAL [DE 21]

Along with its instant motion to dismiss, Metro filed a sealed version of the Declaration of its President and CEO[1], Daniel Deutsch. [DE 21-2]. Metro filed a motion to maintain the Deutsch Declaration under seal stating that it includes "specific [] private financial information of Metro," a

---

[1] In his Declaration, Mr. Deutsch identifies himself as Metro's "President and CEO" even though Metro's motion to seal identifies him as its "co-president and designer of its product." [*Compare* DE 21-2 at 1, *with* DE 21 at 1].

privately owned company whose financials are not public.  [DE 21 at 1].  Metro reports that Plaintiffs are taking no position on the motion to seal, and Plaintiffs did not file a response to the motion despite being afforded more than ample time to do so.  *See* N.D. Ind. L.R. 7-1(d)(3)(A). Therefore, the Court can only assume that Plaintiffs have no objection to Metro's motion to seal.

The Court is usually inclined to grant uncontested motions, but lack of objection is an insufficient basis for maintaining any filing under seal.  When deciding whether to seal any document, a court must determine whether good cause exists to do so because it is in the public interest to keep court proceedings publicly accessible. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999). "Information that affects the disposition of litigation belongs in the public record unless a statute or privilege justifies nondisclosure." *United States v. Foster*, 564 F.3d 852, 853 (7th Cir. 2009).

Fed. R. Civ. P. 26(c)(1)(G) authorizes the Court to require "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  "[S]ome financial information might qualify" for protection from public disclosure, but "some or most financial information will not . . . ." *Cook Inc. v. Bos. Sci. Corp.*, 206 F.R.D. 244, 249 (S.D. Ind. 2001).  Parties seeking protection for financial information "must present reasons for protection and criteria for designation other than simply that the information is not otherwise publicly available." *Id.*  "They must describe a category or categories of information and show that substantial privacy interests outweigh the presumption of public access to discovery material." *Id.*; *see also In re: Med. Informatics Eng'g, Inc., Customer Data Sec. Breach Litig. (MDL 2667)*, CAUSE No. 3:15-md-2667-RLM-SLC, 2016 WL 409303, at *1 (N.D. Ind. Feb. 3, 2016).

Metro has not described with specificity categories of protectible financial information in the Deutsch Declaration.  On the other hand, Metro has implied that the Deutsch Declaration need not be sealed in its entirety by referencing information, even some financial information, in its publicly

3

accessible brief in support of its motion to dismiss.  [*See* DE 20-1 at 5–7 (describing Metro's business, products, manufacturer, distributor, sales figures, and customers); 7 n.3 (providing 2023 sales numbers for Metro's bezel product); 9 (reporting Metro's total revenue figures and comparing them to revenue figures for sales in New York); 20 (arguing venue would be proper in Delaware, New Jersey, and New York)].  Further, Plaintiffs have not suggested that they or the public would be prejudiced by maintaining the Deutsch Declaration under seal.

Nevertheless, good cause presumably exists to maintain at least some of Metro's financial information under seal consistent with Fed. R. Civ. P. 26(c)(1)(G).  The best way to ensure that the protectible parts of the Deutsch Declaration remain properly protected while the Clerk of Court facilitates transfer of this case, which is discussed below, is to maintain the entirety of the Deutsch Declaration under seal.[2]  Therefore, with good cause shown, Metro's motion to seal is **GRANTED**.  [DE 21].  The Clerk is **DIRECTED** to maintain Mr. Deutsch's Declaration [DE 21-2] under seal.

The parties are reminded that a motion can be filed in the future, if necessary, to unseal the Declaration in full or in part to protect any public interest absent from the record now before this Court.  Additionally, the transferee court retains authority to review the sealing of any document at any time during the course of the case.

## II.    METRO'S MOTION FOR LEAVE TO SUBMIT ADDITIONAL EVIDENCE [DE 39]

Metro's Motion for Leave to Submit Additional Evidence in Support of its Motion to Dismiss for Lack of Jurisdiction seeks leave to file evidence produced in a separate lawsuit.  [DE 39].  On May 14, 2024—after the instant motion to dismiss became ripe, Metro filed suit in the Southern District of New York ("SDNY") against Furnlite for copyright infringement and violation of New York's unfair competition law.  *Metro Light & Power LLC v. Furnlite, Inc.*, Case Number 1:24-cv-3713-

---

[2] In this Opinion and Order, the Court will only cite  information from the Deutsch Declaration that Metro has publicly disclosed through its briefing of the instant motion to dismiss.

AS ("SDNY Case").  Metro's claims arise from the same dispute involving the same parties, products, and factual basis presented to this Court through Plaintiffs' declaratory judgment action. [*See* SDNY Case, DE 1].  Furnlite filed a motion to dismiss arguing that Metro's case is duplicative of Plaintiffs' first filed declaratory judgment action and should either be dismissed or transferred to this Court.  [*Id.* DE 22].  Attached to Furnlite's motion to dismiss was the Declaration of Attorney Todd T. Taylor, Plaintiffs' intellectual property counsel in Indiana.  In the Declaration, Mr. Taylor averred that "[a]t no time during [the parties'] communications [in August 2023] did Metro's legal counsel threaten that Metro was going to file legal action in any court."  [*Id.* DE 22-1].

Metro now seeks leave to submit the Taylor Declaration as additional evidence in support of its instant motion to dismiss Plaintiffs' declaratory judgment action.  Metro characterizes Mr. Taylor's statement as a "***recent admission[]*** by Plaintiff that there was no threat of suit when they filed their original and the amended complaint in November 2023."  [DE 39 at 2 (emphasis in original)].  In its brief, Metro also mentions that Furnlite's counsel disclosed the location of former and current Furnlite employees in North Carolina, Washington, D.C., Missouri, and Alabama as well as information about Dekko design patents, including the location of their inventors, in response to a question from Metro[3].  [DE 39-1 at 4].  Metro contends that this information further supports its assertions regarding lack of subject matter jurisdiction and improper venue.

Plaintiffs object to Metro's motion to file the additional evidence arguing that these efforts to supplement the record do not advance Metro's jurisdictional and venue arguments.  In so doing, Plaintiffs imply that the evidence Metro wants to file is not prejudicial to their positions on Metro's motion to dismiss.  Moreover, Plaintiffs do not challenge the veracity of the additional evidence. Without any showing of prejudice, this case is best served by a complete record, including the

---

[3] In its brief, Metro presents the response in what appears to be a block quote but does not indicate when the question was asked, what the question was, when the response was made, or the context of the question that led to Furnlite's disclosures.  [DE 39-1 at 4].

additional evidence Metro wants to file.  Therefore, Metro's motion to submit additional evidence in support of its motion to dismiss is **GRANTED**.  [DE 39].  Metro's brief regarding its submission of additional evidence [DE 39-1] and the Taylor Declaration [DE 39-2] will be considered by this Court in reaching its decision on the pending motion to dismiss [DE 20].

### III.    METRO'S MOTION TO DISMISS [DE 20]

#### A.    Relevant Background

Dekko is an Indiana corporation with its principal place of business in Fort Wayne, Indiana. [DE 16 at 1–2, ¶ 2].  As relevant here, Dekko designs and manufactures in-surface power distribution units and power supply products through its subsidiary, Furnlite.  [*Id.* at 3, ¶ 9].  Furnlite is a North Carolina corporation with its principal place of business in Lawndale, North Carolina. [*Id.* at 2, ¶ 3].  Plaintiffs' amended complaint includes the following image of Furnlite's in-surface power distribution unit:



[*Id.* at 3, ¶ 11].  Dekko holds several design patents on the ornamental appearance of power distribution units that are linearly arranged power receptacles and data ports with a thin bezel that are either surface mounted or clamp on to work surfaces.  [*Id.* at 3–4, ¶ 12; *see also* DE 16-1 (Dekko's design patents)].

According to Metro's president and CEO, Daniel Deutsch, Metro is a Delaware limited liability company located in Englewood, New Jersey—a suburb of New York City—and has a New York-based distributor, Mormax, Inc.  [DE 21-2 at 2, ¶ 7].  Metro designs and manufactures bezel cover plates that are typically sold with furniture power distribution units ("FDPUs") for installation

in hotels and other commercial properties.  [*Id.* at 1, ¶¶ 1–2].  Metro's motion to dismiss includes the following image of one of its bezel products:



[DE 20-1 at 6].

In 2023, sales of Metro products through its distributor Mormax accounted for 72.7 percent of Metro's annual sales while direct sales from Metro accounted for the remainder of annual sales.  [DE 20-1 at 6–7].  Metro sold some bezel products as well as some of its other products to two buyers in Jasper, Indiana, which is in the Southern District of Indiana.  [*Id.* at 7].  Metro has no offices, employees, financial relationships, or property in Indiana.  [*Id.*].  Metro's sales of all its products, including bezel products, in Indiana accounted for about 2.5 percent of its total revenue in 2023[4].  [*Id.*].  In the same year, Metro's sales to New York-based buyers accounted for nearly 75 percent of its annual revenue.  [*Id.* at 9].

Metro contends that in the summer of 2023, its distributor Mormax was alerted by two customers that Furnlite representatives had shown them samples of a product that looked like Metro's bezel product.  [*Id.* at 11].  This led Metro's attorney to send identical cease and desist letters to Dekko in Indiana and Furnlite in North Carolina on August 15, 2023, informing Plaintiffs that their bezel product was causing confusion with Metro products in the market and asking them to

---

[4] This number is based on the Court's own calculation derived by dividing Metro's $175,000 in 2023 Indiana sales by Metro's $7 million in 2023 revenue, as reported in Metro's motion briefing.  [DE 20-1 at 7].

stop showing and selling their bezel products.  [DE 16-3 at 1; 20-14 at 2–3].  Metro also indicated

that Plaintiffs' bezel product infringes its trade dress while simultaneously stating that it wanted to

avoid litigation.  [*Id.*].  Metro attached the following photos of Plaintiffs' alleged copycat bezel

products to its motion to dismiss.



[DE 20-9].

In response to Metro's letters, Plaintiffs' IP lawyer sent a letter to Metro's attorney on

August 31, 2023, denying that the Furnlite products infringed any trade dress, caused consumer

confusion, or otherwise violated federal law.  [DE 16-4].  The response letter noted Dekko's design

patents on the ornamental appearance of linear type power and data modules with a bezel.  [*Id.*].  In

subsequent email communications between counsel in September and October, Metro described its

trade dress and asked for a sample of Furnlite's allegedly "copycat" bezel product to examine.  [DE

20-1 at 12].  According to Plaintiffs' lawyer, "[a]t no time during these communications did Metro's

legal counsel threaten that Metro was going to file legal action in any court."  [DE 39-2 at 3, ¶ 9].

Before Metro received Furnlite's product for review in mid-November 2023, Plaintiffs initiated this

declaratory judgment action on November 1, 2023.  [DE 2].  The parties continued to negotiate, but

Plaintiffs rejected Metro's settlement offer on January 5, 2024.  [DE 20-1 at 12; *see also* DE 20-10].

Through its instant motion to dismiss, Metro argues that there is no subject matter

jurisdiction for this action because (1) there is no patent or other federal question at issue, and (2)

there was no cause or controversy under Article III at the time this action was filed as Metro had not

8

taken or threatened any affirmative action against Plaintiffs. Metro also requests dismissal of this case because venue is improper in this District. Alternatively, Metro asks that this case be transferred to the Southern District of New York for the convenience of the parties and witnesses.

## IV. ANALYSIS

### A. Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) authorizes parties to seek dismissal of cases for lack of subject matter jurisdiction. The parties asserting jurisdiction—in this case, Plaintiffs—have the burden of proof to show that the court has subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). Rule 12(b)(1) motions to dismiss are evaluated differently depending on their purpose. *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009)). "If subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *United Phosphorus*, 322 F.3d at 946. A factual challenge to the court's subject matter jurisdiction, on the other hand, is based on the assertion that "the complaint is formally sufficient but . . . there is *in fact* no subject matter jurisdiction." *Id.* (emphasis in original). When considering a factual challenge to the court's jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (quoting *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007)). Here, Metro argues that there is in fact no subject matter jurisdiction. Thus, the Court will consider all the evidence submitted related to subject matter jurisdiction.

### 1.     Federal Question Jurisdiction

In their amended complaint, Plaintiffs allege that "[t]his action arises under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*; the Lanham Act, 15 U.S.C. § 1051 *et seq.* and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202."  [DE 16 at 2, ¶ 5].  Plaintiffs also allege that "[t]his Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1125(a)."  [*Id.*, ¶ 6].  Attached to Plaintiffs' amended complaint are eight design patents held by Dekko and issued between May 3, 2016, and April 12, 2022 [DE 16-1]; five third party competitor patents issued between 2003 and 2016 [DE 16-2]; Metro's letter to Dekko on August 15, 2023 [DE 16-3]; and Dekko's response to the letter dated August 31, 2023 [DE 16-4].  Along with its motion to dismiss, Metro provided a copy of its letter to Furnlite dated August 15, 2023, which is identical to the letter of the same date to Dekko.  [DE 20-14].

Metro argues that Plaintiffs have not alleged federal question jurisdiction because (1) the Declaratory Judgment Act does not create subject matter jurisdiction or venue; (2) no party has alleged patent infringement or linked any claim or defense to the patent system; and (3) Metro did not assert or threaten a Lanham Act suit in its presuit communications with Plaintiffs, including the August 15, 2023, letters.  There is no dispute that "[t]he Declaratory Judgment Act does not confer jurisdiction but, rather, provides an additional remedy where jurisdiction already exists." *Holasek v. U.S. Dep't of Just.*, 123 F. Supp. 2d 1126, 1129 (N.D. Ill. 2000) (quoting *Balanyi v. Local 1031, Int'l Bhd. of Elec. Workers AFL-CIO*, 374 F.2d 723, 726 (7th Cir. 1967).  Additionally, Plaintiffs agree with Metro that no patent issue exists in this action to trigger federal question jurisdiction because Metro possesses no design patent for any of the relevant products and has not alleged any patent infringement.  Therefore, the only jurisdictional question to consider is whether the Lanham Act, specifically 15 U.S.C. § 1125(a), confers subject matter jurisdiction in this case.

To establish subject matter jurisdiction, Plaintiffs rely upon Metro's identical cease-and-desist letters to Dekko and Furnlite on August 15, 2023. Metro's letters read:

> It has been brought to Metro's attention that Dekko/Furnlite is showing products to Metro's customers that copy, or are so close in design to, Metro's Bezel products, that they appear to be part of Metro's Bezel product line, Metro's customers have brought your products to our attention. Your product is causing confusion with Metro products (e.g., slim diminutive exterior trim, flush-with-surface mounting method, narrow case and sleek design). We ask that your organization stop showing, and selling products that appear to be the same as Metro's Bezel products or that look so similar as to cause confusion in the market. Furnlite's conduct infringes Metro's trade dress, causes consumer confusion, and potentially, among other things, violates 15 U.S. Code § 1125(a)(1). Metro does not want a lawsuit. Litigation is burdensome and distracting in any business, and should never be necessary to protect creative work.
>
> Please confirm in writing by August 31, 2023, that your company has stopped selling its version of Metro's Bezel's products.
>
> If our request is unclear or seems to be unnecessary or inappropriate, please let's talk this out.

[DE 16-3; DE 20-14]. Section 1125(a) is part of the federal Lanham Act, which "permits a civil action against any person who uses 'any word, term, name, symbol, or device' 'in connection with any goods or services' in a manner which 'is likely to cause confusion' as to the source of those goods or services." *Bodum USA, Inc. v. A Top New Casting, Inc.*, 927 F.3d 486, 491 (7th Cir. 2019) (quoting 15 U.S.C. § 1125(a)(1)(A)). "The [Lanham] Act's protection extends to a product's trade dress, which includes a product design that is so distinctive it identifies the product's source." *Id.* (quoting *Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 418 (7th Cir. 2017); *see also TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001) ("The design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source; and a design or package which acquires this secondary meaning ... is a trade dress[.]"). "As with any other trademark, infringement of a product's trade dress is actionable under the [Lanham] Act." *Bodum USA, Inc.*, 927 F.3d at 491; *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)

(holding that the Lanham Act protects against unfair competition through trade dress infringement even if the trade dress is not registered with the United States Patent and Trademark Office).

Plaintiffs contend that Metro's express references to a potential trade dress claim pursuant to 15 U.S.C. § 1125(a) in the August 2023 cease-and-desist letters are sufficient to establish federal question jurisdiction under 28 U.S.C. § 1331. Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Metro, on the other hand, argues that its August 2023 letters did not assert any violation of the Lanham Act. Metro acknowledges that the letters reference trade dress rights but note that the letters only state that Plaintiffs' conduct "potentially, among other things, violates 15 U.S. Code § 1125(a)(1)." Metro also argues that it has trade dress rights under state law that are not preempted by the Lanham Act.

Metro contends that it intentionally decided not to make any demand under the Lanham Act in its August 2023 letters such that the letters did not assert a violation of the Lanham Act. Metro is correct that the letters only say that Plaintiffs' conduct "potentially" violated Section 1125(a)(1). Yet the letters explicitly accuse Plaintiffs of trade dress infringement for which the Lanham Act creates a civil cause of action. *See Bodum USA*, 927 F.3d at 491. Thus, it was reasonable for Plaintiffs to infer that a Lanham Act claim might follow if they did not stop selling the bezel product as Metro directed or if the talks Metro invited did not resolve its trade dress concerns.

Metro's letters only buoyed that inference because the only legal authority they mention is 15 U.S.C. § 1125(a)(1), which is part of the Lanham Act. Nevertheless, Metro now attempts to negate the reference to a potential Lanham Act claim by invoking trade dress rights under state law and arguing that they are not preempted by the Lanham Act. Federal law preempts state law in three situations: (1) when the federal statute explicitly provides for preemption; (2) when Congress intended to occupy the field completely; and (3) "where state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." *Spietsma v. Mercury Marine,* 537 U.S. 51, 64–65 (2002) (internal quotation marks and citations omitted).

Generally, "the Lanham Act has not been interpreted as a statute with broad preemptive reach." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 919 (7th Cir. 2007). In assessing whether the Lanham preempted the punitive damages provisions of Illinois trademark law, the Seventh Circuit compared the approaches to punitive damages under the Lanham Act and Illinois trademark law. *Id.* at 917–919. The court found that Illinois trademark law was substantively coterminous with federal law but provided for broader damages, including punitive damages. *Id.* at 917–19. The court concluded that "Congress would have acted more clearly if it had intended to displace state punitive damage remedies" before finding that the Illinois punitive damages remedies were not preempted by the Lanham Act. *Id.* at 919.

The facts in this case are different from *JCW Investments*, but the process for assessing whether the Lanham Act preempts Metro's state-based trade dress rights would similarly require comparison to the applicable state law. The only authority cited by Metro in its cease-and-desist letters was the Lanham Act. No state laws were mentioned. Through its briefing here, however, Metro invokes New York's unfair competition law and New Jersey state law in the same substantive area. Metro directs the Court's attention to New York and New Jersey cases affirming that the Lanham Act does not preempt their states' laws as well as differences between the legal standards for state law unfair competition and dilution claims and the comparable federal Lanham Act claims. [*See* DE 35 at 7–8 (citing *Ivy League, Sch., Inc. v. Danick Indus., Inc.*, 999 N.Y.S.2d 797, *9–11 (N.Y. Sup. Ct. 2014); *Miss Universe, L.P., LLLP v. Villegas*, 672 F. Supp. 2d 575, 595 (S.D.N.Y. 2009); *Rubik's Brand Ltd. v. Flambeau, Inc.*, 17-CV-6559 (PGG) (KHP), 2021 WL 363704, at *21 (S.D.N.Y. Jan. 31, 2021); *ITC, Inc. v. Punchgini, Inc.*, 880 N.E.2d 852, 860 (N.Y. 2007); *Gateway 2000, Inc. v. Cyrix Corp.*, 942 F. Supp 985, 989–90 (D.N.J. 1996))].

Yet none of these cases suggest that Metro would be precluded from filing a state law and parallel Lanham Act claim. The federal district court in *Gateway 2000* found that it lacked subject matter jurisdiction over a case where the plaintiff chose to pursue only a state law claim even though the same set of facts would have supported a federal claim. 942 F. Supp. at 990. The court explicitly stated that "[a] plaintiff asserting facts that may invoke either Federal or state jurisdiction may choose to limit the claim to one based solely upon state law and proceed in state court." *Id.* In other words, the court implied that a plaintiff could choose to pursue either state, federal, or both claims. The Seventh Circuit has insinuated the same thing stating that "to the extent that state substantive law survives and is coterminous with federal law in this area, state law remedies should survive as well." *JCW Invests., Inc.*, 482 F.3d at 919. Therefore, Metro's right to pursue any state law claims is not impeded by this action. Even so, the parties' underlying trade dress infringement dispute was defined clearly by Metro in its cease-and-desist letters as a potential Lanham Act claim.

Metro is correct that jurisdiction must exist at the time a complaint is filed. *See Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 799–80 (7th Cir. 1980). Metro may not have known the full extent of the differences and similarities of the competing bezel products when Plaintiffs initiated this case. But Metro had enough information to write cease-and-desist letters in August 2023 alleging facts that could support a Lanham Act claim and suggesting the possibility of a Lanham Act claim and then to pursue discussions of that dispute until November 2023. As a result, Plaintiffs' declaratory judgment claim presents a federal question consistent with the subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1125(a).

### 2.    Actual Controversy

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

28 U.S.C. § 2201(a).  "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  To meet the case-or-controversy requirement, a dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (internal quotations omitted).  More concisely, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

An injury-in-fact "fairly traceable" to the party holding the intellectual property right must be established or else there is not an immediate and real controversy.  *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338 (Fed. Cir. 2008).  "[A] fear of future harm that is only subjective is not an injury or threat of injury caused by the defendant that can be the basis of an Article III case or controversy." *Id.* (citing *City of L.A. v. Lyons*, 461 U.S. 95, 103 (1983)).  Metro argues that its August 2023 letters did not create a basis for a case or controversy under Article III.  Metro contends that the letters did not threaten suit but rather communicated that "it may turn out it could have a Lanham Act claim after investigation."  [DE 20-1 at 16].

The plain language of the letters does not offer such a tentative view of Metro's intentions regarding Plaintiffs' alleged trade dress infringement.  Admittedly, Metro's letters did not explicitly promise litigation.  But as noted before, they unambiguously accuse Plaintiffs of infringing its trade dress rights in its bezel product and causing consumer confusion before directing Plaintiffs to confirm in writing—within sixteen days—that they stopped selling their version of the bezel product.  [DE 16-3, DE 20-4].  Only after such explicit statements does Metro indicate that

Plaintiffs' conduct *might* violate the Lanham Act, that "Metro does not want a lawsuit," and that Metro would like to "talk this out" if Plaintiffs were to find its "request" unclear, unnecessary, or inappropriate.  [*Id.*].  Metro's letters send a mixed message, at best, as to whether Plaintiffs will face a lawsuit or other affirmative action from Metro if they do not stop selling the bezel products at issue.

Nevertheless, Metro cites *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998) and *Prasco* to defend its position there is no actual case or controversy here because it never threatened suit against Plaintiffs.  In *Red Wing Shoe*, a declaratory judgment action, the court was faced with the question of whether three cease-and-desist letters sent by the defendant to the plaintiff into a particular state sufficed to establish personal jurisdiction over the defendant in that same state.  148 F.3d at 1359.  The court held that they did not.  *Id.* at 1360.  The court reasoned that cease-and-desist letters often establish minimum contacts with a state but "such contacts alone would not comport with principles of fairness" inherent in the related concept of "fair play and substantial justice" considered in a personal jurisdiction analysis.  *Id.* at 1360–61.  As the *Red Wing Shoe* court states, "[a] patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement."  *Id.* at 1361. However, a party's connection to a forum state does not factor into any determination of whether a definite, concrete, real, and substantial dispute exists between adverse parties, which is the standard applicable to the case-or-controversy question posed by Metro.  *See MedImmune*, 549 U.S. at 127. Metro cites no authority to support such a connection.  Therefore, *Red Wing* does not help Metro's argument that the August 2023 letters do not establish an Article III case or controversy.

*Prasco* presents facts distinguishable from those in this case and does not advance Metro's case-or-controversy argument either.  In *Prasco*, the court found a case or controversy lacking where the defendant had "not taken a concrete position adverse to" the plaintiff's or taken any "affirmative actions at all related to the [the plaintiff's] product."  537 F.3d at 1340.  *Prasco* was a declaratory

judgment action between two pharmaceutical companies about alleged patent infringement. 537 F.3d at 1334. When the *Prasco* plaintiff filed its declaratory judgment complaint, it had not begun marketing its product and the defendant company did not know the plaintiff's product existed until the suit was filed. *Id.* The court found that the defendant company's marketing of its own product combined with a prior infringement suit the defendant filed against the plaintiff regarding a different product did not show that the defendant had taken a concrete position adverse to the plaintiff's. *Id.* at 1340–41. The court also noted that the defendant had taken no affirmative actions related to the product at issue. *Id.* at 1340. As a result, the court held that there was no case or controversy under Article III and dismissed the declaratory judgment action for lack of jurisdiction. *Id.* at 1342.

Unlike the *Prasco* plaintiff, Metro acted by sending the August 2023 letters to notify Plaintiffs of the bezel products at issue and to inform Plaintiffs of the reports from Metro customers that Furnlite was showing them bezel products and causing confusion between the Furnlite and Metro products. As such, Metro defined a concrete position adverse to Plaintiffs, not a hypothetical set of facts, for which a declaratory judgment could provide relief. *See MedImmune*, 549 U.S. at 127.

Even if Metro had explicitly stated an intent not to sue Plaintiffs for trade dress infringement, a justiciable controversy for purposes of declaratory judgment could still exist. In *SanDisk Corp. v. STMicroelectronics, Inc.*, the patentee stated that it had no intent to sue the alleged infringer, but the alleged infringer still filed a declaratory judgment action, which was dismissed by the trial court for lack of an actual controversy necessary to establish jurisdiction. 480 F.3d 1372, 1377 (Fed. Cir. 2007). The dismissal was vacated and the case remanded to the trial court after the appellate court found that an actual controversy existed. *Id.* at 1383. The appellate court considered the totality of the circumstances and found that the patentee had

> engaged in a course of conduct that show[ed] a preparedness and willingness to
> enforce its patent rights despite [the statement of no intent to sue]. Having
> approached [the alleged infringer], having made a studied and considered
> determination of infringement . . ., having communicated that determination to [the

> alleged infringer], and then saying that it does not intend to sue, [the patentee engaged] in the kinds of "extra-judicial patent enforcement with scare-the-customer-and-run tactics" that the Declaratory Judgment Act was intended to obviate.

*Id.* Similarly, Metro's August 2023 letters did not expressly threaten suit but did accuse Plaintiffs of marketing and selling products that allegedly infringed trade dress rights in its bezel products by utilizing "slim diminutive exterior trim, flush-with-surface mounting method, narrow case and sleek design." [DE 16-3, DE 20-4]. Metro also demanded that Plaintiffs immediately remove their products from the market, which created an objective threat of injury to Plaintiffs if they did not comply. [*Id.*]. In so doing, Metro showed its readiness to enforce its trade dress rights even while simultaneously preferring to avoid litigation. Therefore, Metro established a case or controversy under Article III to support this declaratory judgment action. *See SanDisk*, 480 F.3d at 1383.

Metro does not challenge the applicability of *SanDisk* to this case. Instead, it argues that the risk of any infringement claim here is considerably less than it was in *SanDisk*. Metro notes that *SanDisk* involved two large companies with significant resources while Metro itself is a very small company with limited resources attempting to protect its trade dress rights from Plaintiffs, who are part of a large public conglomerate. Yet neither Metro's size nor its express interest in and efforts to resolve the infringement dispute without litigation mooted the actual controversy presented for the first time in the August 2023 cease-and-desist letters to Plaintiffs. *See SanDisk*, 480 F.3d at 1383. Therefore, a case or controversy under Article III of the Constitution exists conferring jurisdiction on this Court for purposes of the Declaratory Judgment Act.

### B.     Venue

In pleading venue here, Plaintiffs state that "[v]enue is [sic] this district is proper pursuant to 28 U.S.C. § 1391 as Metro transacts business in this district and a substantial part of the events giving rise to Plaintiffs' claims occurred and are continuing to occur in this district." [DE 16 at 3, ¶ 8]. Through the instant motion, Metro challenges the propriety of venue in this District under 28

U.S.C. § 1406(a) and alternatively argues that this case should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses.

> For declaratory judgment actions, venue is proper in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §1391(b); *cf.* 28 U.S.C. § 1400 (providing different standards for venue in cases involving patents and copyrights, mask works, and designs inapplicable here). Metro argues that venue is not proper under 28 U.S.C. § 1391(b)(1) and (2). "If venue is improper, a court may either dismiss the suit or transfer it to a district in which the plaintiff would have initially filed the suit if 'it be in the interest of justice.'" *Adlaka v. State Farm Ins. Cos. Fire Claims Div.*, No. 2:20-CV-15-TLS-JPK, 2020 WL 3129234, at *4 (N.D. Ind. June 12, 2020) (citing 28 U.S.C. § 1406(a)). On a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), "the Court must . . . take all allegations in the complaint as true, and . . . must resolve all factual disputes in favor of the party contesting the motion to dismiss." *Payne v. N. Tool & Equip. Co.*, No. 2:13-CV-109-JD, 2013 WL 6019299, at *2 (N.D. Ind. Nov. 12, 2013); *see also Timm v. Goodyear Tire & Rubber Co.*, No. 2:14-CV-232-PPS-JEM, 2014 WL 6909015, at *2–3 (N.D. Ind. Dec. 8, 2014).

### 1. Residence of Defendant, 28 U.S.C. § 1391(b)(1)

Metro argues that it does not reside in Indiana. For purposes of venue,

> an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.

28 U.S.C. § 1391(c)(2).  In cases brought in states with multiple judicial districts, a limited liability company such as Metro "resides in any district in which it would be subject to personal jurisdiction were that district a state." *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013).  Thus, the question for venue purposes in this cases is whether Metro would be subject to personal jurisdiction in the Northern District of Indiana.  *See id.*

In a federal question case, "a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020) (internal quotation omitted).  Plaintiffs' declaratory judgment claim arises from the Lanham Act, "which does not authorize nationwide service of process." *Id.*  Therefore, this Court may only exercise personal jurisdiction over Metro if authorized by Indiana law.  *See be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing Fed. R. Civ. P. 4(k)(1)).  Courts in Indiana "may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Ind. R. Tr. P. 4.4(A). Therefore, this Court must decide whether exercising personal jurisdiction over Metro "comports with the limits imposed by federal due process." *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

The federal due process analysis, grounded in "traditional notions of fair play and substantial justice," requires that the court base its personal jurisdiction on the defendant's minimum contacts with the state of Indiana.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The defendant's contacts must be made purposefully and lead that defendant reasonably to anticipate being hauled into an Indiana court.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

Notably, Metro has conceded personal jurisdiction in the State of Indiana by failing to timely move for dismissal of this case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  *See* Fed. R. Civ. P. 12(h)(1)(B)(i) ("A party waives any defense listed in Rule 12(b)(2) . . . by . . . failing to either make it by motion under this rule . . . .").  Metro indirectly confirmed its waiver of the

personal jurisdiction defense when it stated in its reply brief that Plaintiffs' briefing on personal jurisdiction was irrelevant because it did not move to dismiss on that basis.  [DE 35 at 10].  Nevertheless, a defendant may concede personal jurisdiction in a state with more than one district and simultaneously contest venue in one of the state's districts based on the lack of minimum contacts in that district.  *KM Enters.*, 725 F.3d at 733.  That is the situation Metro presents here.  [*See* DE 35 at 10 ("Metro moved to dismiss for lack of venue or to transfer under either Section 1406(a) or 1404(a), because it has no contacts with the Northern District of Indiana and no substantial part of the substance of this case arose here.")

Metro argues that it lacks minimum contacts with the Northern District because it does not transact business in the Northern District despite Plaintiffs' allegation in its amended complaint that it does  In support, Metro describes minimal Indiana sales in 2023 to only two customers—both in Jasper, Indiana, which is in the Southern District of Indiana, not the Northern District. Additionally, neither Metro nor its subsidiary has employees, property, bank accounts, or sales in the Northern District of Indiana according to its President and CEO.  [DE 20-1 at 20; DE 35 at 10].

Plaintiffs' briefing on personal jurisdiction, which Metro found irrelevant to the instant motion, could be construed to argue that Metro established sufficient minimum contacts with the Northern District by intentionally placing their products into the stream of commerce anticipating that the products will be purchased and delivered to customers across the country, including the Northern District.  [*See* DE 31 at 11 (citing *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996))].  "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State*."* *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98 (1980).

As Plaintiffs assert, Metro's website identifies many business clients, including but not limited to international hotel chains with locations across the state of Indiana.  [*See* DE 20-2 at 8–10].  Yet nothing in the record establishes that Metro targeted the Northern District of Indiana for sales of its products despite its client list or even its internet presence.  "Significant caution is certainly appropriate when assessing a defendant's online contacts with a forum to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum."  *Curry*, 949 F.3d at 400.  Nothing on Metro's website or that of its exclusive distributor, Mormax, suggest that it has facilitated direct online sales.  Metro's website does not include a dedicated "order" function, just a "contact us" page that does not explicitly reference sales or orders.  *See* Metro Light & Power, https://metrolightandpower.com (captured by Metro on March 11, 2024, and attached to its motion to dismiss as DE 20-2).  Similarly, Mormax's website lacks a customer-driven "order" function providing only a "request a quote" form.  *See* MORMAX, Metro Light & Power, https://mormax.com/products/power-and-charging/metro-light-and-power/, (last visited December 22, 2024).  As a result, potential Metro customers must communicate with the company more extensively than required for an unassisted online order common among other internet retailers.  And with no record of sales in the Northern District of Indiana, nothing suggests that Metro put its products into the stream of commerce intending to develop sales in the Northern District.

Communications threatening suit or proposing settlement should also be considered when evaluating a defendant's contacts with a forum.  *Trimble, Inc. v. PerDiem Co., LLC*, 997 F.3d 1147, 1155–57 (Fed. Cir. 2021).  Thus, Metro's August 15, 2023, letter to Dekko in Fort Wayne, Indiana is relevant to the contacts analysis even though cease-and-desist letters are typically insufficient on their own to create personal jurisdiction without a showing of other contacts with the forum.  *See Red Wing Shoe*, 148 F.3d at 1383.  Metro's counsel's email communications with Plaintiffs' counsel,

Todd Taylor, in Avilla, Indiana, documented by four email exchanges attached as exhibits to Metro's motion to dismiss [DE 20-5, 20-7, 20-8, 20-10], discussed resolution of the trade dress dispute and is also relevant to the contacts analysis. *See Trimble*, 997 F.3d at 1155. These communications, however, only demonstrate Metro's efforts to enforce its trade dress rights. They do not describe any effort by Metro to develop its business in the Northern District.

Therefore, Metro has not established minimum, purposeful contacts with the Northern District such that it would anticipate being hauled into court in this District. *See Int'l Shoe*, 326 U.S. at 316; *Burger King*, 471 U.S. at 474. Accordingly, Metro is not a resident of the Northern District of Indiana pursuant to 28 U.S.C. § 1392(c)(2) and venue is not proper in the Northern District under 28 U.S.C. § 1391(b)(1).

### 2. Substantial Part of Events, 28 U.S.C. § 1391(b)(2)

In determining where the substantial part of events at issue in an action occurred, courts consider the underlying substance of the litigation. *Family Express Corp. v. Square Donuts, Inc.*, CAUSE NO.: 2:16-CV-103-TLS, 2016 WL 3855174, at *8 (N.D. Ind. July 14, 2016). Plaintiffs' declaratory judgment action concerns the manufacture, marketing, and sales of their bezel product that allegedly infringes on Metro's trade dress rights in its bezel product and has caused confusion in the marketplace limiting Metro's sales. There is no dispute that Dekko designed, manufactured, and sold the accused bezel product through its subsidiary, Furnlite, in North Carolina and that those efforts were managed by Dekko employees in Fort Wayne, Indiana, which is located in the Northern District. [*See* DE 16 at 3, ¶ 9; DE 39-1 at 4]. No one disputes that Dekko's website lists a sales office in New York City. [*See* DE 20-13 at 3–4]. Yet the record includes nothing showing where Plaintiffs' bezel products were sold. In support of venue in this District, Plaintiffs contend, without specificity, that most of the relevant evidence, and the focus of discovery, will primarily be records created by Dekko and testimony of its employees in the Northern District.

There is also no dispute as to the location of Metro's activities regarding its bezel product. A small New Jersey company, Metro sells a large majority of its bezel products through its exclusive distributor, Mormax, located in Elmsford, NY. [DE 20-1 at 6–7]. A primary market for Metro's products is New York City as evidenced by the list of its projects there for assorted commercial operations and with both architectural and design firms as well as lighting design firms. [*Id.* at 7–9]. This case will also turn on whether Plaintiffs' product is causing confusion in the relevant marketplace for Metro's bezel product. With most of its sales in New York City and none in the Northern District of Indiana, confusion in New York is a substantial part of events relevant to this case. Metro's only intentional activities in the Northern District have been communications with Dekko and its counsel after it learned of Plaintiffs' potential trade dress infringement.

As a result, the substantial part of the events giving rise to their declaratory judgment action did not occur in the Northern District of Indiana despite Plaintiffs' argument to the contrary. Therefore, venue is not proper here pursuant to 28 U.S.C. § 1391(b)(2) either.

### 3.    District of Proper Venue

While the Northern District of Indiana is not the proper venue for this action, it could have been brought in one of at least three other judicial districts pursuant to 28 U.S.C. § 1391(b)(1) or(2). For venue purposes, Metro is a resident of the judicial districts in Delaware, its state of incorporation, and New Jersey, its principal place of business. *See* 28 U.S.C. § 1391(b)(1); (c)(2). Additionally, Metro has purposefully availed itself of the privilege of conducting activities, including but not limited to sales in the Southern District of New York where New York City is located. As such, Metro would anticipate being hauled into court in the Southern District of New York. *See Burger King*, 471 U.S. at 474. Therefore, Metro is also a resident of the Southern District of New York for venue purposes pursuant to 28 U.S.C. §§ 1391(b)(1) and (2). Plaintiffs do not deny that this lawsuit could have been properly filed in any of these judicial districts. As such, the interests of

justice militate against dismissing this action for improper venue and for transfer to a district where venue is proper. *See* 28 U.S.C. § 1406(a); *see also Adlaka*, 2020 WL 3129234, at *4.

Metro has explicitly asked the Court to transfer this case to the Southern District of New York, Manhattan Division if the case is not dismissed. And as mentioned above, Metro has already filed a separate case in the Southern District of New York based on the same facts underlying this case. Transferring this case anywhere else would only complicate litigation for the parties and the transferor court while also risking inconsistent judgments. Therefore, this case will be transferred to the Southern District of New York. Transfer for convenience of the parties and witnesses under 28 U.S.C. § 1404(a) need not be addressed.

## III.  CONCLUSION

For the reasons discussed above,

(1)    Metro's motion to submit additional evidence in support of its motions to dismiss for lack of subject matter jurisdiction is **GRANTED** [DE 39];

(2)    Metro's motion for leave to file the Daniel Deutsch Declaration under seal is **GRANTED** [DE 21] as detailed above; and

(3)    Metro's motion to dismiss for lack of subject matter jurisdiction is **DENIED** while the motion to dismiss for improper venue is **GRANTED**.  [DE 20].  The Clerk is **DIRECTED** to transfer this case to the Southern District of New York.

SO ORDERED.

December 23, 2024

       /s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT